

FILED
MAR 24 2014
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE B. HENDERSON, SR.,
TERESA S. HOLMES, DERICK SEALEY
And ALBERT HOLLOWAY JR.,
*On behalf of themselves and all others
Similarly situated,*

Civil Action No: 3:14CV208

v.

WAL-MART STORES, INC.
SERVE:    CT CORPORATION SYSTEM
             4701 Cox Road, Suite 285
             Glen Allen, VA 23060

and

STERLING INFOSYSTEMS, INC.
SERVE:    Secretary of the Commonwealth
             P.O. Box 2452
             Richmond, VA 23218-2452

And

STERLING INFOSYSTEMS-OHIO, INC.,
SERVE:    Secretary of the Commonwealth
             P.O. Box 2452
             Richmond, VA 23218-2452

And

SELECT STAFFING, LLC.
SERVE:    Secretary of the Commonwealth
             P.O. Box 2452
             Richmond, VA 23218-2452

## CLASS ACTION COMPLAINT

Now Come the Plaintiffs, Tyrone B. Henderson, Sr. ("Henderson"), Albert Holloway, Jr. ("Holloway"), Teresa S. Holmes ("Holmes") and Derick Sealey ("Sealey") on behalf of

themselves and all other similarly situated individuals and for their Class Action Complaint alleges the following claims:

## RELATED CASE

1. This case is properly related to *Tyrone Henderson, et al v. Acxiom Information Security Services, et al* 3:12-cv-00589-REP ("Related Action") as the consumer reports and related conduct alleged herein are the same reports and the same conduct alleged in the Related Action. The original report that gave rise to the Related Action claims of Tyrone Henderson was in his application for employment at Wal-Mart. Each of the named Plaintiffs in this action, and the putative class members, are also class members in the putative classes alleged in the Related Action. Two of the three of the defendants in this action are defendants or directly involved in the Related Action. And the nature and subject of these claims herein has been raised in conjunction with settlement efforts in the Related Action.

## NATURE OF THE ACTION

2. Plaintiffs bring this action against Defendants for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681b(b)(3) and 1681e(b).

3. Wal-Mart operates a chain of retail stores throughout the United States, which it staffs with consumers like Plaintiffs. As part of its hiring process, Wal-Mart uses criminal-background reports generated by the Sterling Defendants to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the criminal-background reports, Wal-Mart is obliged to adhere to certain strictures of the FCRA.

4. Sterling Defendants operate a national database of public records and related employment histories as a nationwide consumer reporting agency ("CRA"). They maintain a FCRA database to prepare and furnish consumer reports for employment and other purposes.

The Sterling Defendants provided these consumer reports to prospective and existing employers of Plaintiffs and members of the putative Classes. Many of these employers, like Wal-Mart and Select Staffing, refused to hire or discharged Plaintiffs and other individuals based in whole or in part on the contents of the consumer reports.

5. When using criminal-background reports for employment purposes, "users" must, before declining employment based in whole or in part on the contents of the report, provide job applicants like Plaintiffs with a copy of their respective reports as well as a written summary of their rights under the FCRA.

6. Providing a copy of the criminal-background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

7. To complete this process—consideration of the background reports and sending of the mandatory FCRA notices, Wal-Mart and Select Staffing have hired Sterling Defendants, which operate in this and many instances as both the consumer reporting agency generating the background check as well as the agent of the employer to execute all decisions based on the information contained therein.

8. Defendants are informed of the necessary rigors FCRA compliance imposes, as the facts alleged in this case have been the subject of extensive litigation against Sterling and its predecessor Acxiom Information Security Services, Inc. in which the agency was required by federal court order to maintain procedures for compliance it apparently has now abandoned.

*Beverly v. Wal-Mart Stores, Inc.* (and ChoicePoint), CIV.A. 3:07CV469, (E.D. Va. May 1, 2009) (Dkt. No. 82); *Williams v. LexisNexis Risk Mgmt. Inc.*, CIV.A. 3:06CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007).

9. Plaintiffs bring nationwide, class claims against Defendants' under 15 U.S.C. § 1681b, because they, as an omission in their Wal-Mart hiring process failed to provide Plaintiffs with a copy of the criminal-background report or a summary of their rights under the FCRA before taking an adverse action against them.

10. Plaintiffs Henderson, and Holloway also bring individual claims under 15 U.S.C. § 1681e(b) against the Sterling Defendants because of inaccuracies contained in their Sterling reports. Sterling Defendants sold to Wal-Mart a report on Plaintiffs Henderson and Holloway that contained criminal history belonging to different persons.

## PARTIES

11. Plaintiff Tyrone Henderson ("Henderson") is a "consumer" as defined by 15 U.S.C. § 1681a.

12. Plaintiff Teresa S. Holmes ("Holmes") is a "consumer" as defined by 15 U.S.C. §1681a.

13. Plaintiff Derick Sealey ("Sealey") is a "consumer" as defined by 15 U.S.C. §1681a.

14. Plaintiff Albert Holloway, Jr. ("Holloway") is a "consumer" as defined by 15 U.S.C. § 1681a.

15. Wal-Mart ("Wal-Mart") is a for-profit corporation conducting business and hiring employees in the Eastern District of Virginia and in the United States.

16. Further, Wal-Mart ("Wal-Mart") is a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers", as those terms are defined by 15 U.S.C. § 1681a.

17. Defendant, Select Staffing, LLC. ("Select") is a limited liability company hired by Wal-Mart to find, screen and place employees in its facilities in order to separate Wal-Mart from direct responsibility for the employee's benefits and unemployment insurance.

18. Defendant Sterling Infosystems, Inc. is a "consumer reporting agency" that sells and furnishes consumer reports and services in Virginia and throughout the United States, including within this District and Division.

19. Defendant Sterling InfoSystems-Ohio, Inc., formerly known as Acxiom Information Security Services, Inc. ("Sterling-OH") is a "consumer reporting agency" that sells and furnishes consumer reports and services in Virginia and throughout the United States, including within this District and Division.

## JURISDICTION AND VENUE

20. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

21. Venue is proper in the Eastern District of Virginia because Defendants are subject to personal jurisdiction in this District, maintain a place of business in this District, and makes employment decisions and/or sell consumer reports regarding individuals residing in this District. 28 U.S.C. § 1391(c). The claims and subject matter of this case is identical to that litigated and ultimately certified and settled on a class basis before this Court. Further, Mr. Henderson is a resident of this District and Division and a Plaintiff in a pending related action involving the Sterling Defendants used by Wal-Mart as alleged herein. Plaintiffs Sealey and

Holmes are also residents of Virginia and this District and all Plaintiffs are putative class members of the classes alleged in the Related Action.

## FACTUAL ALLEGATIONS

22. Before January 2012, Sterling Infosystems-Ohio, Inc. ("Sterling Ohio") operated as Acxiom Information Security Services, Inc. It was then sold as a wholly owned subsidiary to Sterling Infosystems, Inc. ("Sterling"). Sometime after that month, it changed its name and Sterling Ohio and Sterling became entirely responsible for the conduct and liabilities of Sterling Ohio.

23. During the class periods, the Sterling Defendants furnished consumer reports concerning Plaintiffs to Wal-Mart and, upon information and belief, supplied additional consumer reports to third-party staffing companies such as Select Staffing for employment purposes at Wal-Mart, which are also the subject of this suit.

24. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information.

25. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

28. The FCRA mandates that a report user, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the applicant's report and a summary of the applicant's rights under the FCRA.

6

26. Wal-Mart and Select Staffing delegate the determination of an applicant's employability to the Sterling Defendants, which the apply Wal-Mart's hiring criteria to the applicant's consumer report.

27. Although Wal-Mart and Select Staffing - through Sterling's automatic adjudication process - deem an applicant ineligible for hire based in whole or in part on a consumer report, they do not notify the applicant of that fact until after the decision not to hire has been finalized.

28. Further, the Sterling Defendants themselves also act to code and adjudicate Wal-mart (and Select Staffing) applicants

29. In short, Wal-Mart does not provide pre-adverse action notice to job applicants, together with a copy of the applicant's consumer report and a description of the applicant's rights as required by 15 U.S.C. § 1681b(b)(3).

30. Wal-Mart's violations of the FCRA have been willful, wanton and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA.

31. Moreover, Wal-Mart has actual knowledge of the FCRA's pre-adverse action notice requirements, as it was previously sued in this District for similar violations in 2006. See Beverly v. Wal-Mart Stores, Inc., 2008 U.S. Dist. LEXIS 2266 (E.D. Va. Jan. 11, 2008)(Williams, J.)(denying Wal-Mart's motion seeking summary judgment on plaintiff's claims that it failed to provide pre-adverse action notices required by FCRA).

32. Wal-Mart's willful disregard of its duties violates the FCRA as a matter of law, and it exacts serious consequences on job applicants and interstate commerce. The natural result of Wal-Mart's failures to abide by the conditions, procedures and limitations of the FCRA

prejudices consumers' ability to challenge information contained in consumer reports provided to Wal-Mart.

## THE EXPERIENCES OF THE REPRESENTATIVE PLAINTIFFS

(a.)    **Plaintiff Tyrone Henderson**

33.     Tyrone Henderson applied for a job at Wal-Mart in 2009, which required that he submit to a background check as a condition of employment.

34.     At the end of March 2009, and within five years of this filing, Wal-Mart purchased a background check on Henderson from Sterling Ohio for an employment purpose.

35.     Immediately thereafter and in accordance with Defendant's standard procedures, Sterling Ohio furnished to both Wal-Mart and to itself, as the agent of Wal-Mart and the party responsible for making the actual hiring decision for Wal-Mart.

36.     Unbeknownst to Henderson, Sterling Ohio used the consumer report it obtained and/or created to take an adverse-employment action against him. As authorized under their contract with Wal-Mart, Sterling Ohio applied Wal-Mart's pre-defined hiring criteria and coded Mr. Henderson as ineligible for employment. Sterling Ohio then notified Henderson directly that he was not hired.

37.     This adjudication and coding constituted an "adverse action" by Sterling Ohio, and by Wal-Mart.

38.     Sterling Ohio's decision to code Henderson as ineligible for hire was based upon several "hits" attributed to Henderson and furnished in his consumer report. These hits include purported felony conviction public records from Westmoreland Count, Pennsylvania.

39. The Westmoreland records, however, did not belong to Plaintiff Henderson. Rather, they regarded an unrelated man with a similar name, but entirely different Social Security Number.

40. Prior to taking adverse action against Henderson, both Sterling Ohio and Wal-Mart failed to provide him with any pre-adverse action notice required by § 1618b(b)(3)(A).

41. Mr. Henderson and other consumers like him did not have a reasonable means to learn of this process alleged herein or of Wal-Mart's use of Sterling Ohio to adjudicate Wal-Mart's employment actions, or of Sterling Ohio's own adverse action process. Mr. Henderson learned of this alleged violation by Wal-Mart within two years of the filing of this action.

**(b.)  Plaintiff, Teresa S. Holmes.**

42. In November 2012, Teresa S. Holmes applied for a job at Wal-Mart.

43. As part of the application screening process, Wal-Mart requested a consumer report regarding Holmes from Sterling Ohio on November 19, 2012.

44. On November 19, 2012, Sterling Ohio prepared a consumer report on Teresa S. Holmes that was created and individually used by Sterling Ohio on behalf of Wal-Mart to adjudicate Holmes' application to work at Wal-Mart.

45. On November 19, 2012, Sterling provided Wal-Mart with a report that reported a 2005 criminal conviction for possession.

46. Immediately thereafter and in accordance with Defendants' standard procedures, Sterling Ohio used the consumer report it obtained and/or created to take an adverse employment action against Holmes.

47. As authorized under its contract with Wal-Mart, Sterling Ohio applied Wal-Mart's pre-defined hiring criteria and coded Ms. Holmes as ineligible for employment.

48. This adjudication and coding constituted an "adverse action" by Sterling Ohio, and by Wal-Mart.

49. Prior to taking adverse action against Holmes, both Wal-Mart and Sterling Ohio failed to provide her with the pre-adverse action notice and notices required by §1681b(b)(3)A.

50. While Sterling Ohio forwarded Holmes a pre-adverse action letter dated November 20, 2012, and a post-adverse action letter dated November 28, 2012, its adverse action and Wal-Mart's decision not to hire Holmes had already been made by Sterling on behalf of Wal-Mart on or before November 19, 2012.

(c.) **Plaintiff, Derick Sealey**

51. In December 2013, Derick Sealey for a job at the Wal-Mart Distribution Center in Williamsburg, Virginia.

52. Sealey was tentatively hired on January 28, 2014, with an expected start dated of February 14, 2014. However, when Sealey called to obtain the details about his first day of work he was advised that he was not hired after all due to the results of his background report.

53. As part of the application screening process, Wal-Mart requested a consumer report regarding Sealey from Sterling Ohio on January 28, 2014.

54. On January 30, 2014, Sterling Ohio prepared a consumer report on Sealey that was created and individually used by Sterling on behalf of Wal-Mart to adjudicate Sealey's application to work at Wal-Mart.

55. On January 30, 2014, Sterling Ohio provided Wal-Mart with a report that reported a misdemeanor conviction.

56. Immediately thereafter and in accordance with Defendants standard procedures, Sterling Ohio used the consumer report it obtained and/or created to take an adverse employment

action against Sealey.

57. As authorized under its contract with Wal-Mart, Sterling Ohio applied Wal-Mart's pre-defined hiring criteria and coded Sealey as ineligible for employment.

58. This adjudication and coding constituted an "adverse action" by Sterling Ohio, and by Wal-Mart.

59. Prior to taking adverse action against Sealey, Sterling Ohio and Wal-Mart failed to provide him with the pre-adverse action notice required by §1681b(b)(3)A.

60. At all times pertinent hereto, Wal-Mart's conduct, as well as that of its agents, servants, and/or employees, was intentional, willful, and in reckless disregard of federal laws and the rights of Plaintiffs, Henderson, Holloway, Holmes and Sealey and the putative class members.

(d.) **Plaintiff, Albert Holloway, Jr.**

61. In early 2011, Albert Holloway, Jr. had been working for approximately twelve weeks at Wal-Mart through a temporary agency. Mr. Holloway learned that Wal-Mart Management had chosen him for permanent employment with Wal-Mart because of his hard work, job performance and dependability.

62. Holloway was told to report for orientation at Wal-Mart on March 3, 2011.

63. Upon information and belief, at some point prior to March 3, 2011, a consumer report on Holloway was created and used by Sterling on behalf of Wal-Mart to adjudicate Holloway's application to work at Wal-Mart.

64. Immediately thereafter and in accordance with Defendant's standard procedures, Sterling furnished Holloway's consumer report to Wal-Mart, through Select Staffing and to

itself, as the agent of Wal-Mart and the party responsible for making the actual hiring decision for Wal-Mart.

65. Unbeknownst to Holloway, on behalf of Wal-Mart, Sterling used the consumer report it obtained and/or created to take an adverse-employment action against him. As authorized under its contract with Wal-Mart, Sterling applied Wal-Mart's pre-defined hiring criteria and coded Mr. Holloway as ineligible for employment.

66. This adjudication and coding constituted an "adverse action" by Sterling Ohio, and by Wal-Mart and Select Staffing.

67. Mr. Holloway received a call the morning he was to report for orientation at Wal-Mart and was informed that his background check revealed a felony conviction and therefore he was no longer eligible of employment with Wal-Mart.

68. Mr. Holloway never received a copy of the background report prepared by Sterling.

69. Mr. Holloway again applied for employment with Wal-Mart, through Select Staffing in March 2012.

70. Upon information and belief, on or prior to March 23, 2012, a consumer report on Holloway was created and used by Sterling on behalf of Wal-Mart to adjudicate Holloway's application to work at Wal-Mart.

71. Immediately thereafter and in accordance with Defendants' standard procedures, Sterling furnished Plaintiff's consumer report to Wal-Mart, through Select Staffing, and to itself as the agent of Wal-Mart and the party responsible for making the actual hiring decision for Wal-Mart.

72. Unbeknownst to Holloway, on behalf of Wal-Mart and Select Staffing, Sterling used the consumer report it obtained and/or created to take an adverse-employment action against him. As authorized under its contract with Wal-Mart and Select Staffing, Sterling applied Wal-Mart's pre-defined hiring criteria and coded Mr. Holloway as ineligible for employment.

73. This adjudication and coding constituted an "adverse action" by Sterling, and by Wal-Mart and Select Staffing.

74. Sterling's decision to code Holloway as ineligible for hire was based upon several "hits" attributed to Holloway and furnished in his Sterling consumer report. These hits include purported public records of a criminal charge of possession of cannabis that occurred in 2008 in Hillsborough, Florida and three worthless check charges that were noted as still "open" and pending which occurred in 2001 and 2002, in Leon County, Florida.

75. The above Hillsborough and Leon County records, however, did not belong to Plaintiff Holloway. Rather, they regarded an unrelated man with a similar name, but entirely different Social Security Number.

76. Prior to taking adverse action against Holloway, upon information and belief on two or more occasions, Wal-Mart, Sterling and Select Staffing failed to provide him with any pre-adverse action notice required by § 1618b(b)(3)(A).

### CLASS ACTION ALLEGATIONS

#### PLAINTIFFS' PROPOSED WAL-MART CLASSES

77. Plaintiffs bring this action on a class basis, with three distinct class definitions based on time period and defendant.

78. *Wal-Mart Class, Sterling Infosystems-Ohio, Inc., March 22, 2012 to the present.* Plaintiffs Holmes and Sealey bring this class action pursuant to Rules 23(a) and 23(b)

of the Federal Rules of Civil Procedures, on behalf of the following Class initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a.) who applied for an employment position with Wal-Mart (b.) as part of this application process were the subject of a consumer report generated by Sterling Infosystems-Ohio, Inc., on or after March 22, 2012 and through the pendency of this action (c.) where that consumer report contained an item that would disqualify the person from such position under Wal-Mart's written hiring policies, (d.) which consumer was not then approved or hired for the position, (e.) and to whom Defendants did not provide a copy of the consumer report and other disclosures stated at 15 U.S.C. §1681 b(b)(3)(A)(ii) at least five business days before the date the employment decision was adjudicated by Sterling Infosystems-Ohio, Inc.

79. ***Wal-Mart Class, Sterling Infosystems-Ohio, Inc., March 22, 2009 through December 4, 2011.*** Plaintiff Henderson brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following Class initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a.) who applied for an employment position with Wal-Mart (b.) as part of this application process were the subject of a consumer report generated by Sterling Infosystems-Ohio, Inc., March 22, 2009 through December 4, 2011 (c.) where that consumer report contained an item that would disqualify the person from such position under Wal-Mart's written hiring policies, (d.) which consumer was not then approved or hired for the position, (e.) and to whom Defendants did not provide a copy of the consumer report and other disclosures stated at 15 U.S.C. §1681 b(b)(3)(A)(ii) at least five business days before the date the employment decision was adjudicated by Sterling Infosystems-Ohio, Inc.

80. ***Wal-Mart Class, Select Staffing, Sterling Infosystems, Inc., March 22, 2009 to the present.*** Plaintiff Holloway brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following Class initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a.) who applied for an employment position with Wal-Mart through Select Staffing (b.) as part of this application

process were the subject of a consumer report generated by Sterling Infosystems, Inc., on or after March 22, 2009 and through the pendency of this action (c.) where that consumer report contained an item that would disqualify the person from such position under Wal-Mart's written hiring policies, (d.) which consumer was not then approved or hired for the position, (e.) and to whom Defendants did not provide a copy of the consumer report and other disclosures stated at 15 U.S.C. §1681 b(b)(3)(A)(ii) at least five business days before the date the employment decision was adjudicated by Sterling Infosystems, Inc.

81. Upon information and belief, the putative Classes exceed 1,000 members. Information concerning the exact size of the putative Class is within the exclusive possession of Defendants or their agents.

82. The Class members are so numerous that joinder of all members is impracticable.

83. Plaintiffs' claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendants' unlawful conduct in violation of the FCRA.

84. Plaintiffs will fairly and adequately protect the interest of the Class members and have retained counsel competent and experienced in complex litigation. Plaintiffs are members of the Classes and do not have any interests antagonistic to or in conflict with the members of the Classes. Plaintiffs' claims are the same as those of the Classes, which all arise from the same operative facts and are based upon the same legal theories.

85. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

  a. Whether the uniform timing of Defendants notice to consumers that employment may be declined or terminated based in whole or in part on information contained in a consumer report satisfies the timing requirements at 15 U.S.C. § 1681b(b)(3);

  b. Whether the adjudication of the Plaintiffs' applications constituted an "adverse action";

  c. Whether Defendants' violations of the FCRA were "willful".

86. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

87. Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

### COUNT ONE – CLASS CLAIM – ALL DEFENDANTS
### Failure to Provide Pre-Adverse Action Notice – Copy of Report
### 15 U.S.C. § 1681b(b)(3)(A)(i)

88. Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

89. Defendants willfully violated 15 U.S.C. §§ 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an employment decision to the Plaintiffs and the Class members before taking adverse action that was based in whole or in part on that report.

90. Plaintiffs and the Class members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

91. Plaintiffs and the Class members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2) and equitable and/or injunctive relief.

92. In the alternative to the allegations that these violations were willful, Plaintiffs and the Class members allege that the violations were negligent and seek issue certification of

that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. §1681o and Fed. R. Civ. P. 23(c)(4).

93. Plaintiffs' counsel seeks attorneys fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

### COUNT TWO– CLASS CLAIM – ALL DEFENDANTS
### Failure to Provide Pre-Adverse Action Notice – Summary of Rights
### 15 U.S.C. § 1681b(b)(3)(A)(ii)

94. Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

95. Defendants willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights required by this section to the Plaintiffs and the Class members before taking adverse action that was based in whole or in part on a consumer report.

96. Plaintiffs and the Class members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A) and equitable and/or injunctive relief.

97. Plaintiffs and the Class members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

98. In the alternative to the allegations that these violations were willful, Plaintiffs and the Class members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

99. Plaintiffs counsel seek attorneys fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

### COUNT THREE - INDIVIDUAL CLAIM - STERLING
### 15 U.S.C. § 1681e(b)
### (Henderson and Holloway)

100. Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

101. Defendants Sterling and Sterling Ohio violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding the Plaintiffs Henderson and Holloway.

102. As a result of this conduct by Sterling and Sterling Ohio, the Plaintiffs suffered actual damages, including without limitation, by example only and as described herein on their behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

103. Defendants' violations of 15 U.S.C. § 1681e(b) were reckless, rendering Sterling liable pursuant to 15 U.S.C. § 1681n. In the alternative, Sterling and Sterling Ohio were negligent, entitling Plaintiffs Henderson and Holloway to recover under 15 U.S.C. § 1681o.

104. Plaintiffs Henderson and Holloway are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE**, Plaintiffs and the putative classes respectfully pray for the following relief:

    A. An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

    B. The creation of a common fund available to provide notice of and remedy Defendants' unlawful conduct;

    C. That judgment be entered for Plaintiffs Henderson and Holloway individually for actual and/or statutory damages and punitive damages against Sterling and Sterling Ohio for their violation of 15 U.S.C. §1681e(b), pursuant to 15

U.S.C. §§1681n and 1681o;

D. Statutory and punitive damages for all class claims;

E. Equitable and/or injunctive relief;

F. Attorney fees, expenses and costs; and

G. Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**TYRONE B. HENDERSON, SR., ALBERT HOLLOWAY, JR. TERESA S. HOLMES and DERICK SEALEY,** *on behalf of themselves and all others similarly situated*

By: /s/

Dale W. Pittman, VSB #15673
Attorney for Plaintiff
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb Street
Petersburg, VA 23803-3212
Telephone: (804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Leonard A. Bennett, VSB No. 27523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard
Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com

Susan M. Rotkis, VSB No. 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard
Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
E-mail: srotkis@clalegal.com

Matthew J. Erausquin, VSB No. 65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Telephone: (703) 273-7700
Facsimile: (888) 892-3512
E-mail: matt@clalegal.com

Christopher C. Colt, VSB#16955
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, VA 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com

*Counsel for Plaintiffs*